# United States District Court
## District of Massachusetts

```
                                  )
United States of America          )
                                  )
           v.                     )        Criminal Action No.
                                  )        00-40013-NMG
Charles F. Roy, Jr.,              )
                                  )
           Defendant.             )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Charles F. Roy, Jr. ("defendant" or "Roy") pled guilty in May, 2003 to conspiracy to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). In February, 2004, defendant pled guilty to use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Defendant was sentenced as a career offender to 271 months of incarceration followed by five years of supervised release.

In June, 2016, defendant petitioned to vacate his sentence pursuant to 28 U.S.C. § 2255 based upon the decision in <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015) ("<u>Johnson II</u>"). For the reasons that follow, defendant's motion to vacate, set aside or correct his sentence will be allowed.

## I.  **Background**

In November, 2000, defendant was charged in a nine-count superseding indictment with conspiracy to distribute cocaine base (Count 1), possession of cocaine base with intent to distribute and distribution of cocaine base (Count 2), conspiracy to distribute marijuana (Count 4), interstate travel in aid of a racketeering enterprise (Count 5), possession of marijuana with intent to distribute (Count 6), use of a firearm during and in relation to drug trafficking crime (Count 7), witness tampering (Count 8) and retaliation against a witness (Count 9).

In April, 2003, the Court denied defendant's motions to dismiss Counts Six and Seven of the indictment for failure of venue and defendant's motion to sever Count 8 for purposes of trial.  The Court allowed motions to sever Counts 1-3 and Count 9 from the remaining charges for purposes of trial.

Defendant pled guilty to Counts 1 and 2 on May 23, 2003 and Count 7 on February 12, 2004.  Pursuant to the terms of the plea agreement dated September 20, 2003, the government agreed to dismiss Counts Four, Five, Six, Eight and Nine "provided that Defendant is found to be a Career Offender and is sentenced as such".

At the March 29, 2004 sentencing, the Court found that
defendant qualified for the Career Offender enhancement under
the Sentencing Guidelines. U.S.S.G. § 4B1.1 ("the career
offender guideline"). Defendant was over eighteen at the time
he committed the charged controlled substance offenses and he
had two prior felony convictions that the Court determined were
predicate offenses for the career offender designation. The two
predicate offenses were both assault and battery convictions,
one in Westborough District Court in 1997 and the second in
Framingham District Court in 1998.

Defendant was sentenced to a term of imprisonment of 271
months, followed by five years of supervised release. The Court
noted that: 1) the base offense level of Counts 1 and 2 was 22
and no adjustments applied, 2) the base offense level for Count
7, taking into account defendant's designation as a career
offender, was 32 and 3) the defendant was entitled to a three
level downward adjustment for acceptance of responsibility,
resulting in a total offense level ("TOL") of 29. The Court
determined that the defendant had 13 criminal history points,
resulting in a criminal history category ("CHC") of VI. A TOL
of 29 and a CHC of VI resulted in a guideline range of 151 to
188 months. Under 18 U.S.C. § 924(c)(1)(D)(ii), the firearm
offense imposed a ten-year mandatory minimum to be applied

consecutively, resulting in a final guideline range of 271 to 308 months.

On June 22, 2016, defendant filed a petition under 28 U.S.C. § 2255, alleging that his original sentence must be vacated because, after Johnson II, his state court convictions for assault and battery no longer qualify as "crime[s] of violence" under the Sentencing Guidelines. In April, 2017, the Court directed parties to submit supplemental memoranda to explain their positions with respect to how the United States Supreme Court's holding in Beckles v. United States, 137 S. Ct. 886 (2017), affects defendant's petition. Parties submitted their supplemental memoranda in July, 2017.

## II. **Motion to Vacate Sentence**

### A. **Legal Standard**

A prisoner in federal custody may collaterally attack his sentence under 28 U.S.C. § 2255. Section 2255 contemplates four bases on which a federal prisoner may obtain relief:

> (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.

Damon v. United States, 732 F.3d 1, 3 (1st Cir. 2013) (internal quotation marks omitted). The burden of proof is on the

petitioner. <u>Wilder</u> v. <u>United States</u>, 806 F.3d 653, 658 (1st Cir. 2015).

Generally, a federal prisoner challenging his sentence under § 2255 may not rely on a new rule of constitutional law that was announced after his conviction became final. <u>Butterworth</u> v. <u>United States</u>, 775 F.3d 459 (1st Cir. 2015). The Supreme Court has recognized two categories of decisions that fall outside of that general bar on retroactivity: "new <u>substantive</u> rules" and "watershed rules of criminal procedure". <u>Welch</u> v. <u>United States</u>, 136 S. Ct. 1257, 1264 (2016) (citing <u>Teague</u> v. <u>Lane</u>, 489 U.S. 288 (1989)). A prisoner seeking review under § 2255 must bring the motion within one year of the date on which the rule was "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3).

**B. Application**

**1. Residual clause of the career offender guideline**

In June, 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. <u>Johnson II</u>, 135 S. Ct. at 2257. The ACCA applies to a defendant convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g) and mandates an increase in sentence when the defendant

has been convicted of three or more "serious drug offense[s]" or "violent felon[ies]". § 924(e)(1).

The ACCA defines "violent felony" to include any crime punishable by imprisonment for a term exceeding one year that 1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" ("the force clause"), 2) falls within a list of certain enumerated offenses or 3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" ("the residual clause"). § 924(e)(2)(B). The Supreme Court struck down the residual clause as unconstitutionally vague. Johnson II, 135 S. Ct. at 2257. It explained that the residual clause was problematic because it

> combin[ed] indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony.

Id. at 2258. Those indeterminacy concerns led the Court to conclude that the residual clause created more unpredictability and arbitrariness than was permissible under the Due Process Clause. Id.

The following year, the Court held that Johnson II applies retroactively to cases on collateral review. Welch, 136 S. Ct. at 1264. The Court determined that the rule announced in Johnson II was a new substantive rule, and not merely

procedural, because it altered "the range of conduct or the class of persons that the law punishes." Id. at 1264-65 (internal citation omitted).  By restricting the sentencing court's ability to sentence a defendant as an armed career criminal based on the residual clause, the Court in Johnson II altered the "substantive reach of the [ACCA]". Id. at 1265.

In his § 2255 petition, Roy contends that he is entitled to have his sentence vacated because it was predicated on the residual clause of the career offender guideline in the Sentencing Guidelines. See U.S.S.G. § 4B1.2(a).  Roy asserts that the new rule established in Johnson II, made retroactive by Welch, applies to the residual clause of the career offender guideline under which he was sentenced because that clause is identical to the residual clause of the ACCA that was struck down in Johnson II.

While Roy's petition was pending, the Supreme Court considered the applicability of Johnson II to the residual clause of the career offender guideline. Beckles v. United States, 137 S. Ct. 886 (2017).  The petitioner in Beckles was sentenced in 2007, after the Sentencing Guidelines had been made "advisory". See United States v. Booker, 543 U.S. 220, 245 (2005).  The Court in Beckles rejected the petitioner's challenge to the residual clause of the career offender

guideline and held that "the advisory Guidelines are not subject to vagueness challenges". <u>Beckles</u>, 137 S. Ct. at 890.  The Court reasoned that because the advisory Guidelines

> do not fix the permissible range of sentences . . . [they] do not implicate the twin concerns underlying the vagueness doctrine—providing notice and preventing arbitrary enforcement.

<u>Id.</u> at 894.  Justice Sotomayor's concurring opinion, however, emphasized that the majority's opinion "le[ft] open the question" of whether <u>Johnson II</u> applied to the pre-<u>Booker</u> mandatory Guidelines.  <u>Id.</u> at 903 n.4 (Sotomayor, J., concurring in judgment).

In his supplemental memorandum, Roy maintains that the reasoning in <u>Beckles</u> is limited to sentences imposed post-<u>Booker</u> when the Sentencing Guidelines were made advisory.  Roy contends that the distinction between the advisory and mandatory Guidelines is critical and that the Supreme Court recognized as much in its opinion.  He stresses that while the advisory Guidelines are not subject to vagueness challenges, because they merely guide the court's exercise of discretion, the mandatory Guidelines do fix the permissible range of sentences, and are therefore subject to vagueness challenges under the rule announced in <u>Johnson II</u>.

The government rejoins that the decision in <u>Beckles</u> also

applies to sentences imposed pre-Booker when the Sentencing Guidelines were mandatory. The government submits that the mandatory Guidelines did not "fix" minimum or maximum sentences because only Congress has the power to do so and it did not delegate that power to the Sentencing Commission. Furthermore, the government denies that courts lacked discretion under the mandatory Guidelines, pointing to a small number of "exceptional" cases where the Guidelines provided some authority to exceed the statutory maximum.

The First Circuit recently addressed the issue of whether, post-Beckles, the career offender provision of the Sentencing Guidelines is subject to vagueness challenges in pre-Booker cases. Moore v. United States, 871 F.3d 72 (1st Cir. 2017). In Moore, the petitioner sought to file a successive motion to vacate his sentence under 28 U.S.C. § 2255. Id. at 74. Under § 2244(b)(3)(C), a court of appeals may authorize the filing of a successive motion to vacate if the panel determines that the petitioner makes a "prima facie" showing that the motion contains

> a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§§ 2244(b), 2255(h). Moore's motion purported to rely on the new rule created by Johnson II, which he argued "invalidates the

residual clause of the career offender guideline applied at his [pre-Booker] sentencing." Moore, 871 F.3d at 74.

The First Circuit found that Moore made a prima facie showing that his application relied on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. Id. at 80. Stated simply, that rule is as follows: In Johnson II, the Supreme Court held that the residual clause of the ACCA is too vague to provide a standard, consistent with due process, "by which courts must fix sentences". Id. The rule applies to another law, i.e., the Sentencing Reform Act of 1984 ("SRA"), which includes an identically-worded residual clause in the career offender guideline to fix sentences. Id.

In its decision, the First Circuit considered and rejected the very characterization of the pre-Booker, mandatory Guidelines that the government makes here. Id. at 81. The pre-Booker SRA made the Guidelines binding on sentencing judges and the Supreme Court consistently found that the Guidelines had the force and effect of law. Id. (citing Booker, 543 U.S. at 234). Accordingly, the First Circuit has rejected the reasoning of the Eleventh Circuit in a recent case, relied upon by the government here, that the mandatory Guidelines "did not alter the statutory boundaries for sentences set by Congress for the crime." Id.

(citing In re Griffin, 823 F.3d 1350, 1355 (11th Cir. 2011) (which held that the mandatory Guidelines were not subject to vagueness challenges)).  Although the SRA and Booker do not use the term "fix" to describe the effect of the mandatory Guidelines on sentences, the First Circuit in Moore accepts petitioner's argument that "a statute found to 'bind[]' in Booker necessarily 'fix[es]' under Johnson II." Id. at 82.

The government points to the limited exceptions in the SRA that permitted departures from the mandatory Guidelines to suggest that the SRA did not fix sentences in the same way the ACCA does.  As noted by the First Circuit, however, those departures were "limited in scope, and sentencing courts had little leeway in employing them". Id. at 83.  Those limited opportunities for departures did not save the mandatory Guidelines from being held unconstitutional in Booker and they are not enough to immunize the mandatory Guidelines from vagueness challenges here.

In the only other case in this District since Beckles to consider the constitutionality of the residual clause in the career offender guideline, as applied pre-Booker, the court held that it violated the Due Process Clause and allowed the petitioner's motion to correct his sentence. Reid v. United States, No. 03-cr-30031, 2017 WL 2221188 (D. Mass. May 18,

2017).  The reasoning in Beckles depends on the advisory status

of the Guidelines post-Booker and, as such, did not preclude

vagueness challenges to the career offender provision as applied

pre-Booker. Id. at *3; see also In re Hoffner, 870 F.3d 301, 306

(3d Cir. 2017) (stating that Beckles "limited its holding to the

advisory Guidelines" and authorizing a successive § 2255

petition challenging the residual clause of the career offender

guideline as applied pre-Booker).  The court in Reid emphasized

that

> Beckles itself makes clear that its holding does not govern
> sentences imposed under the non-advisory, pre-Booker
> sentencing regime, and [] the logic of the Johnson
> decisions makes them fully applicable in a pre-Booker,
> mandatory Guidelines context...

Reid, 2017 WL 2221188, at *1.

Roy was sentenced in 2004, under the pre-Booker mandatory

Guidelines.  The Supreme Court decision in Beckles is limited to

sentences imposed under the advisory Guidelines.  Accordingly,

Beckles does not preclude application of Johnson II to the

residual clause of the career offender guideline here.

## 2. Retroactivity

The government contends that, even if there is a rule

allowing vagueness challenges to the mandatory Guidelines after

Beckles, that rule is not substantive and therefore does not

apply retroactively to cases on collateral review.  Instead, the

government submits that such a rule would be procedural because it would alter the computation of the Guidelines range but not the actual sentence that Roy received.  Roy denies that the rule is procedural, noting that neither the holding nor reasoning in the Supreme Court's decision in Welch suggest that its decision on the retroactivity of Johnson II should be limited to the ACCA context.

It is undisputed that Johnson II announced a new rule of constitutional law: the residual clause in the ACCA is so vague that it violates due process for sentencing courts to use it to increase minimum or maximum sentences. Johnson II, 135 S. Ct. at 2257.  In Welch, the Court clarified that the rule announced in Johnson II was substantive and therefore applies retroactively to cases on collateral review. Welch, 136 S. Ct. at 1264.

Roy does not ask that this Court establish a new rule, but rather requests that we apply the Johnson II rule to the identically-worded residual clause in the career offender guideline.  In other words, the task at hand is not fashioning a new rule of constitutional law, but rather simply interpreting a statute, the SRA. See Moore, 871 F.3d at 81 (recognizing that Moore's petition did not require the court to "make new constitutional law in order to hold that the pre-Booker SRA fixed sentences").  The pre-Booker SRA made the Guidelines

binding on judges, making them vulnerable to vagueness
challenges under the rule adopted in Johnson II.

The residual clause in the pre-Booker career offender
guideline tracks the residual clause of the ACCA, making "a
straightforward application of Johnson II" appropriate here. Id.
By contrast, the Fourth and Sixth Circuits have each declined to
certify successive § 2255 petitions seeking to apply Johnson II
to the pre-Booker career offender guideline. United States v.
Brown, 868 F.3d 297 (4th Cir. 2017); Rayborn v. United States,
867 F.3d 625 (6th Cir. 2017).  Those courts concluded that the
rule announced in Johnson II is limited to the ACCA and does not
apply to other statutes, and that accordingly, the petitions
were untimely because they could not rely on the rule announced
in Johnson II. Brown, 868 F.3d at 301; Rayborn, 867 F.3d at 627-
28.  Regardless of the logic one may discern from the opinions
of those circuits, the First Circuit has now explicitly rejected
that reasoning in Moore, emphasizing that "Beckles did not limit
Johnson II to its facts". Moore, 871 F.3d at 83.  Instead,
Beckles

> simply reject[ed] the application of the rule of Johnson II
> to the advisory guidelines because, as a matter of
> statutory interpretation, those guidelines do not fix
> sentences.

Id.

The rule Roy relies on here is the rule announced in
Johnson II, simply applied to the pre-Booker career offender
guideline.  That rule is retroactive to cases on collateral
review and nothing in Welch suggests that the retroactivity
determination is limited to cases challenging sentences imposed
under the ACCA

Accordingly, under the rule announced in Johnson II, as
interpreted by the First Circuit, the residual clause of the
career offender guideline is void for vagueness and that rule
applies retroactively on collateral review to the pre-Booker
sentence here.

### 3. Procedural default

The government also contends that Roy's § 2255 claims are
procedurally defaulted because he did not raise the challenge to
the residual clause in his criminal case or on direct appeal.
If a federal prisoner fails to preserve an attack on his
sentence by not presenting it to the trial court and not
pursuing it on direct appeal, he risks dismissal of his § 2255
claim for procedural default. Bucci v. United States, 662 F.3d
18, 29 (1st Cir. 2011).  A procedural default precludes relief
under § 2255 unless the defendant can show that he had "cause
for having procedurally defaulted his claim" and that the
alleged error resulted in "actual prejudice". Id. (internal

quotation marks omitted).  Alternatively, a court can excuse procedural default if the defendant can show that the challenged constitutional error "probably resulted in the conviction of one who is actually innocent".  Bousley v. United States, 523 U.S. 614, 630 (1998) (internal citation omitted).

### a. Cause

First, the government avers that Roy cannot show cause excusing his failure to raise the legal claim at sentencing or on direct appeal.  The government contends that Roy could have challenged the career offender guideline's residual clause as vague well before Johnson II and that the constitutional claim was not so novel that it was unavailable to counsel at the time. Roy rejoins that his Johnson II claim was novel such that any failure to raise the claim earlier should be excused.

In order to show cause, a petitioner must demonstrate that the factual or legal basis for a claim was not "reasonably available to counsel" at the time on direct appeal. Reed v. Ross, 468 U.S. 1, 16 (1984).  Where a petitioner is seeking relief based on a change in the law, he must show that the claim is sufficiently novel. Id.  A claim meets that novelty standard if it is based on a Supreme Court opinion that "explicitly overrule[s]" prior Supreme Court precedent.  Id. at 17.

As has been recognized countless times in this District, Johnson II created a "monumental shift" in the law which explicitly overruled Supreme Court precedent as it existed at the time of Roy's sentencing. United States v. Webb, 217 F. Supp. 3d 381 (D. Mass. 2016). Johnson II thus created a "novel" claim sufficient to excuse any procedural default that occurred here. Virden v. United States, No. 09-10325, 2017 WL 470891, at *3 (D. Mass. Feb. 3, 2017) (holding that there was cause sufficient to excuse petitioner's default and surveying the cases in this District finding cause). Accordingly, this Court concludes that Roy has established cause for his procedural default.

### b. Prejudice

The government also contends that Roy has failed to establish actual prejudice to excuse his procedural default. Specifically, the government asserts that even if Roy's predicate convictions for assault and battery no longer qualify under the residual clause of the career offender guideline, they still fall within the "force clause" of that guideline and are therefore still predicates for that guideline enhancement.

Roy disputes that his predicate convictions qualify as crimes of violence under the "force clause" of the career offender guideline. In his supplemental memorandum, Roy

suggests that recent case law from the First Circuit confirms that a Massachusetts conviction for assault and battery is not a crime of violence.  Roy submits that because he would not have been sentenced as a career offender under the Guidelines, his sentence would have been different and that demonstrates actual prejudice.

To show actual prejudice that excuses procedural default, a petitioner must show that there is a "reasonable probability" that his sentence would have been different but for the alleged error. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015).  In this case, Roy must show that at least one of his predicate convictions for assault and battery is not a "violent felony" covered by the force clause or listed among the enumerated offenses of the career offender guideline.

In Descamps v. United States, 133 S. Ct. 2276, 2283 (2013), the Supreme Court considered how to determine whether an offense qualifies as a violent felony under the ACCA which employs the same definition as the career offender guideline.  Descamps is instructive here because, as the First Circuit has recognized, the terms "crime of violence" under the career offender guideline and "violent felony" under the ACCA are "nearly identical in meaning, so [] decisions construing one term inform the construction of the other". United States v. Faust, 853 F.3d

-18-

39, 57 (1st Cir. 2017) (citing United States v. Willings, 588
F.3d 56, 58 n.2 (1st Cir. 2009)).  Descamps recognizes two
approaches for making the determination about whether an offense
qualifies as a violent felony: 1) a default "categorical
approach" where the statute defining the offense is indivisible
and 2) a "modified categorical approach" where the statute
defining the offense is divisible.  Descamps, 133 S. Ct. at 2281.

A three-step analysis is necessary to determine whether the
offense of conviction involves a violent felony under Descamps.
Faust, 853 F.3d at 50.  First, the court must take the
categorical approach.  Under the categorical approach, the court
considers the elements of the crime in the abstract rather than
the defendant's particular conduct.  Mathis v. United States, 136
S. Ct. 2243, 2248-49 (2013).  If "all of the conduct covered by
the statute categorically requires violent force" then the
conviction under the statute will count as a predicate offense.
Faust, 853 F.3d at 51.  However, if there is a "realistic
probability" that Massachusetts would apply its statute to
conduct that does not involve violent force, then the statute is
not a valid predicate even if the defendant used violent force
in committing the offense.  United States v. Edwards, 857 F.3d
420, 423 (1st Cir. 2017) (quoting Moncrieffe v. Holder, 133 S.
Ct. 1678, 1684-85 (2013)).

Where the statute is overbroad, any violation of it cannot qualify as a predicate offense unless the statute is "divisible".  The court's second step then is to determine whether the statute is divisible into "elements in the alternative" such that it "define[s] multiple crimes".  <u>Mathis</u>, 136 S. Ct. at 2249 (distinguishing between statutes that "list[] multiple elements disjunctively" and statutes "that enumerate[] various factual means of committing a single element").

If the offense is divisible, the court must move to step three and apply the "modified categorical approach" to determine whether the defendant was convicted of the violent form of the offense.  <u>Faust</u>, 853 F.3d at 51.  Under this approach, the court looks to a limited set of documents approved under <u>Shepard</u> v. <u>United States</u>, 544 U.S. 13, 16 (2005), to determine which of the sets of alternative elements the defendant "necessarily admit[ted to] when pleading guilty".  <u>Faust</u>, 853 F.3d at 56.  The inquiry at that stage remains focused on the elements of the crime rather than the specific facts of defendant's conduct.  <u>Id.</u> at 59-60.

Roy's two predicate offenses are convictions under the Massachusetts assault and battery statute, Mass. Gen. Laws c. 265 § 13A, which incorporates the common law variants of assault and battery.  <u>Id.</u> at 55 (considering whether assault and battery

on a police officer, which the Massachusetts statute defines as "an assault and battery upon any public employee when such person is engaged in the performance of his duties", is a valid predicate under the ACCA) (citing Commonwealth v. Eberhart, 965 N.E.2d 791, 798 (2012)).  Under Massachusetts common law there are two theories of assault and battery, intentional battery and reckless battery. Eberhart, 965 N.E.2d at 798 n.13.  Intentional assault and battery is further divided into harmful battery and offensive battery. Faust, 853 F.3d at 55.

The First Circuit determined in Faust that the Massachusetts statute was divisible into reckless and intentional assault and battery, but that the intentional form was not further divisible into its harmful and offensive variations. Id.  It then held that because a merely offensive touching could qualify under the statute, offensive assault and battery does not require violent force. Id. at 55-56.  It follows then that the intentional form of assault and battery is overbroad and cannot serve as a predicate offense. Id.

Because the statute is divisible and the intentional form of assault and battery is not a predicate offense, this Court is required to consider step three to determine (with Shepard-approved documents) whether Roy was convicted of intentional or reckless assault and battery. See, e.g., Monell v. United

States, No. 12-10187, 2017 WL 1826626 (D. Mass. May 5, 2017)
(determining that no Shepard-approved documents demonstrated
that the petitioner was convicted of the reckless form of
assault and battery and that, accordingly, the conviction could
not serve as a predicate offense).  If no record material
"speak[s] plainly", then the court

> will not be able to satisfy Taylor's demand for certainty
> when determining whether a defendant was convicted of a
> generic offense.

Faust, 853 F.3d at 59 (citing Mathis, 136 S. Ct. at 2257
(internal quotation marks omitted)).

The government contends that the two assault and battery
convictions are valid predicates.  First, they suggest that the
1997 conviction is a valid predicate because Roy did not object
to the PSR's factual description which stated that Roy punched
another man in the jaw "for no apparent reason".  Second, the
government asserts that Roy did not argue that the 1998 assault
was not violent, pointing to the police report which describes
Roy and a co-defendant striking a victim with closed fists.

There is some debate about whether an unobjected-to factual
description in the PSR constitutes an admission that is properly
reviewed under Shepard.  See United States v. Serrano-Mercado,
784 F.3d 838, 848-49 (1st Cir. 2015).  The First Circuit in
Serrano-Mercado held that on review after a direct appeal it was

-22-

not plain error for a district court to find that a defendant's prior conviction qualified as a "crime of violence" where the defendant failed to object to the characterization in the PSR. Id. However, it left open the possibility that a different holding may be warranted where the appellant did not object to a description of predicate offenses, "if binding precedent at the time of sentencing held that the offenses categorically qualified as predicates". Monell, 2017 WL 1826626, at *6 (citing Serrano-Mercado, 784 F.3d at 849). That limitation appears to apply to this case.

Even if the Court were to rely on the PSR for the 1997 conviction, the PSR does not demonstrate that Roy was convicted of the reckless form of assault and battery in his 1998 conviction. Instead, the government attempts to proffer evidence from the police report. The Supreme Court in Shepard explicitly held that a sentencing court may not rely on police reports in determining whether the defendant was convicted of a violent or non-violent offense. Shepard, 544 U.S. at 21-23. Accordingly, no Shepard-approved documents "speak plainly" to whether the 1998 conviction was intentional or reckless and the Court therefore cannot "satisfy Taylor's demand for certainty" in determining which form of assault and battery was committed. Faust, 853 F.3d at 52.

-23-

The government's emphasis on the violent nature of the conviction is misplaced.  Because no Shepard-approved document can answer the question of "what crime, with what elements, a defendant was convicted of," Mathis, 136 S. Ct. at 2249, the 1998 conviction cannot serve as a predicate offense.  While this Court concludes that Roy's two prior convictions for assault and battery appear to have been "violent" under a natural understanding of that term, the analysis required by Mathis, and adopted by the First Circuit in Faust, is more abstruse. See also Monell, 2017 WL 1826626, at *7 (finding that although the conduct was "obviously violent in the colloquial sense", no Shepard-approved document demonstrated that the conviction was for reckless assault and battery).

Roy has established a reasonable probability that his sentence "would have been different but for the alleged error," thereby demonstrating the requisite prejudice to overcome the procedural default. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015).  Without the residual clause, Roy does not have two convictions that constitute predicate offenses subjecting him to the increased penalties under the career offender guideline.

**ORDER**

For the foregoing reasons, defendant's motion to vacate his sentence (Docket No. 277) is **ALLOWED.** The clerk will schedule the case for a prompt re-sentencing.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated: October 13, 2017